**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **Dim Njaka,** | **Civ. No. 12-2712 (JRT/JJG)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael D. Kennedy, Pamela-Jeanne Moran, Dana K. Bilyeu, Thomas K. Emswiler, Ronald D. McCray, David A. Jones, Terrence A. Duffy, Patrick R. Donahoe, Gregory T. Long, Seth D. Harris, Acting Secretary of Labor, and Sharon Malmborg,** | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 49), Plaintiff's Application for Temporary Restraining Order (ECF No. 56), Plaintiff's Motion for Preliminary Injunction (ECF No. 57), Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 89), and Plaintiff's Request for a Motion to Reconsider Order Granting Extension of Time (ECF No. 100). The pending dispositive motions were referred to the undersigned United States Magistrate Judge by the Honorable John R. Tunheim, United States District Judge, in an Order of Reference dated February 11, 2014 (ECF No. 65). In the interest of efficiency, and because several of the motions are related, the Court will address both the dispositive and nondispositive motions in this Report and Recommendation.

I.   **Background Provided in the Amended Complaint**

Plaintiff Dim Njaka, who is proceeding pro se,[1] was an employee of the United States Postal Service (USPS) and was injured on the job in 1988. (Am. Compl. ¶ 13, Mar. 5, 2013, ECF No. 9.) His employment was terminated in 1990. (*Id.* ¶ 21.)

Before discussing the factual allegations in the amended complaint, some background on the Federal Retirement Thrift Investment Board (FRTIB or "the Board") and the federal Thrift Savings Plan (TSP) is necessary. FRTIB is an agency in the executive branch of the United States Government responsible for administering the TSP. 5 U.S.C. § 8472(a)[2]; (Am. Compl. ¶ 2). The TSP is a defined contribution retirement savings plan and operates similarly to 401(k) plans offered by private employers. (Am. Compl. ¶¶ 2, 4.) The TSP was created and is governed by the Federal Employees' Retirement System Act of 1986 (FERSA), portions of which were modeled on the Employee Retirement Income Security Act (ERISA). (*Id.* ¶¶ 3-4.)

The FRTIB is composed of five members, each of whom is appointed by the President of the United States. 5 U.S.C. § 8472(b); (Am. Compl. ¶¶ 7, 9). The Board appoints an executive director to manage and oversee the daily operations of the TSP. 5 U.S.C. § 8474; (Am. Compl. ¶¶ 7-8). Under FERSA, the board members and the executive director are named fiduciaries to the TSP, although others may act as fiduciary, providing they satisfy certain requirements. 5 U.S.C. § 8477(a)(3); (Am. Compl. ¶ 7). The board members, executive director, and any other

---

[1] Njaka is proceeding pro se, but is an experienced litigant. *See, e.g.*, *Njaka v. Hellerud*, Civ. No. 07-1435 (JNE/SRN), 2010 WL 1957497 (D. Minn. Apr. 15, 2010), *adopted by*, 2010 WL 1957500 (D. Minn. May 13, 2010); *Njaka v. Potter*, Civ. No. 04-4585 (ADM/AJB), 2006 WL 2717391 (D. Minn. Sept. 22, 2006), *aff'd*, 281 F. App'x 627 (8th Cir. 2008), *cert. denied*, 556 U.S. 1138 (2009); *Njaka v. Nally*, Civ. No. 4:96-1242 (JRT/RLE) (D. Minn. filed Dec. 19, 1996); *Njaka v. US West, Inc.*, Civ. No. 0:97-2071 (ADM/JGL) (D. Minn. filed Sept. 12, 1997).
[2] The Court takes judicial notice of 5 U.S.C. §§ 8472, 8474, and 8477, which discuss the FRTIB.

fiduciaries to the TSP have fiduciary duties to TSP participants. § 8477(a)(3), (b)-(c); (Am. Compl. ¶¶ 7, 9).

Before 1995, the TSP relied on agencies to submit certain forms regarding employee TSP participants. One such form was Form TSP-18, on which employing agencies would communicate a participant's withdrawal options. (Am. Compl. ¶ 50.) Form TSP-18 was discontinued on December 31, 1994. (*Id.* ¶ 52.)

## II.    Facts Alleged in the Amended Complaint

Njaka filed this action in October 2012, and filed an amended complaint in March 2013. The Amended Complaint sets forth the following claims: (1) "Breach of Fiduciary Duty Failure to Act with Care, Skill, Prudence and Diligence"; (2) "Breach of Fiduciary Duty Fraudulent Misrepresentation of Disability Retirement Category by Fiduciary Service Provider"; (3) "Breach of Fiduciary Duty Acting on Behalf of a Party Whose Interests are Adverse to the Thrift Savings Fund"; (4) "Aiding and Abetting Breach of Fiduciary Duty – Moran"; (5) "Aiding and Abetting Breach of Fiduciary Duty – Emswiler"; (6) "Breach of Fiduciary Duty Misrepresentation of Material Fact (Retirement Status) by a Party in Interest"; and (7) "Breach of Fiduciary Duty Failure to Prevent the Transfer of Assets without Adequate Consideration in Violation of 5 U.S.C. § 8477(c)(1)(A)." (Am. Compl. ¶¶ 76-103.)

The Amended Complaint is lengthy and convoluted, leading to difficulty in discerning what facts Njaka is providing and their relevancy to his claims. Njaka alleges that, in 1989 and 1991, he received correspondence from the Department of Labor's Office of Workers' Compensation Programs (OWCP) indicating that it accepted his claim that he sustained an on-the-job injury in 1988. (*Id.* ¶¶ 13-14.) Also in 1989, Njaka received a letter informing him that he was entitled to "leave buy back" from December 19, 1988, through January 20, 1989. (*Id.* ¶

15.) When a participant has claimed leave buy back because they used sick or annual leave to cover an injury-related absence, the participant may elect to receive compensation instead. (*Id.* ¶ 16.) In order for leave to be reinstated, a participant's pay status needed to be changed from "Leave with Pay" to "Leave without Pay" so that compensation could be paid. (*Id.* ¶ 17.) Njaka signed the application for reinstatement of leave in 1989, but his employing agency allegedly did not complete its portion of the form. (*Id.* ¶¶ 18-19.) His employment was terminated in 1990 and the terminal leave worksheet listed a leave balance of one hour. (*Id.* ¶¶ 19-20.)

On June 27, 1990, Njaka received an OWCP compensation check in the amount of $3,035.46, which he thought was related to the leave buy back award. (*Id.* ¶ 23.) On August 20, 1990, Njaka contacted USPS and was told by a USPS retirement specialist that, if his separation was later determined to be improper, he is returned to employment, and his "restoration is with entitlement to pay into the retirement fund [TSP]," his basic pay over the intervening period would be subject to retirement deductions and he would receive credit for the entire period. (*Id.* ¶ 25.) Also in August 1990, a USPS employee completed Njaka's Form TSP-18 and listed his retirement category as "none" rather than "disability/workers' compensation." (*Id.* ¶ 28.) On January 18, 1991, Form TSP-18 was forwarded to a TSP record keeper, where the form was relied on to draft a letter, Form TSP-494, declaring Njaka ineligible for retirement benefits. (*Id.* ¶ 29.) Njaka's TSP funds were then distributed to him due to procedures that called for an automatic distribution[3] when the participant did not list an election. (*Id.* ¶ 30.) The letter warned Njaka that if there was any reason to believe the information was incorrect, he must contact the

---

[3] If a participant's nonforfeitable account balance is below a certain monetary threshold at the time the participant separates from federal service, the balance is automatically distributed to the participant. 5 U.S.C. § 8433(f). At the time relevant to this action, that threshold was $3,500. (Am. Compl. ¶ 48 (citing Thrift Savings Plan Technical Amendments Act of 1990, Pub. L. No. 101-335, 104 Stat. 319) (1990)); *id.* ¶ 58 (discussing $3,500 automatic distribution).

TSP office. (*Id.*) Njaka had no reason to dispute the information, so he signed Form TSP-494 on March 20, 1991, "as a TSP participant without retirement eligibility (generally less than five years of service)." (*Id.* ¶¶ 30-31 (internal quotation marks omitted)). He was later told by FRTIB personnel that information submitted to the FRTIB via Form TSP-18 could have have affected Njaka's eligibility for disability retirement. (*Id.* ¶ 63.)

Njaka cites the erroneous retirement category definition as an example of the "rampant abuse by agencies' personnel offices in not completing Form TSP-18 correctly." (*Id.* ¶ 51.) He continues by alleging that, although Form TSP-18 was eliminated on January 1, 1995, none of the participants that had been affected by incorrect withdrawal options or fraudulent submissions on the TSP-18 and TSP-494 forms were informed. (*Id.*) As support for his claims, Njaka cites audit reports, bulletins, meeting minutes, correspondence, congressional conference reports, and federal statutes. (*See, e.g.*, *id.* ¶¶ 1-9, 14, 37, 41-51, 53, 55, 60-64, 69-72.)

Njaka now brings this action against a number of defendants, who have various connections to Njaka's claims. Defendants Michael D. Kennedy, Dana K. Bilyeu, Ronald D. McCray, David A. Jones, and Terrence A. Duffy are current board members of the FRTIB (*Id.* ¶ 1); Gregory T. Long is the current FRTIB Executive Director (*id.*); and Njaka notes that Pamela-Jeanne Moran was the FRTIB Director of the Office of Participant Services for the FRTIB (*id.* ¶ 11), and Thomas K. Emswiler was FRTIB General Counsel (*id.*).[4] Of the other defendants, two were or are employed by the USPS, Sharon Malmborg, identified as a USPS benefits officer

---

[4] Emswiler submits a declaration on behalf of Defendants on which he identifies himself as Director, Office of Participant Operations and Policy at the FRTIB.

(*id.*), and Patrick R. Donahoe, Postmaster General (*id.*). Finally, Seth D. Harris is sued as the United States Secretary of Labor (*id.*).[5]

### III. Motion to Dismiss

Defendants move to dismiss this action with prejudice on a number of grounds and pursuant to Fed. R. Civ. P. 12(b)(2), (4), (5), and (6). The Court will address the Rule 12(b)(6) argument first.

On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court accepts as true the facts alleged in the Complaint and construes all reasonable inferences in the light most favorable to the plaintiff. *See Butler v. Bank of America, N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### A.     Fiduciaries

Defendants argue that Njaka purports to bring this action against a number of Defendants who are not amenable to suit under FERSA. The text of FERSA defines a fiduciary as a member of the Board; the executive director; "any person who has or exercises discretionary authority or discretionary control over the management or disposition of the assets of the Thrift Savings

---

[5] Harris was the Acting Secretary of Labor. Thomas E. Perez is the current United States Secretary of Labor. Because the caption refers to Harris, the Court will refer to Harris for the sake of consistency, although acknowledging that when a public official is sued in his or her official capacity, the successor is automatically substituted. *See* Fed. R. Civ. P. 25(d).

Fund"; and "any person who, with respect to the Thrift Savings Fund, is described in [a particular section of the ERISA,] 29 U.S.C. 1002(21)(A)."[6] § 8477(a)(3).

A review of the Amended Complaint confirms that Njaka cites numerous provisions of law that specifically discuss fiduciaries and attempts to apply those provisions to non-fiduciaries. *See, e.g.*, 5 U.S.C. § 8477(b)(1) ("a fiduciary shall discharge his responsibilities . . . ."); *id.* § 8477(c)(1) ("A fiduciary shall not permit the Thrift Savings Fund to engage in any of the following transactions . . . ."); *id.* § 8477(c)(2) ("a fiduciary with respect to the Thrift Savings Fund shall not . . . ."); *id.* § 8477(e)(1)(A) ("Any fiduciary that breaches the responsibilities, duties, and obligations . . . ."); *id.* § 8472(h) ("The members of the Board shall discharge their responsibilities solely in the interest of participants and beneficiaries . . . .").

The Court has painstakingly matched the various Defendants with the various allegations lodged. Defendants concede that Defendants Kennedy, Bilyeu, McCray, and Jones all qualify as fiduciaries, as does Long, as Executive Director. (Defs.' Mem. at 13.) Defendants note that, because it appears that Duffy was sued only in his official capacity, he should be substituted with his Board replacement, William Jasien, who was confirmed in July 2013. *See* Fed. R. Civ. P. 25(d) (stating that when a public officer sued in an official capacity leaves office while an action is pending, the officer's successor is automatically substituted as a party). Thus, Jasien is also properly a fiduciary.

But that leaves Harris, Moran, Emswiler, Malmborg, and Donahoe, none of whom are properly considered fiduciaries under FERSA.[7] Although claims may properly be asserted

---

[6] Title 29 U.S.C. 1002(21)(A) focuses primarily on those who have discretionary authority or control over a plan.

[7] Njaka also alleges facts pertaining to the USPS, which is not a party to this action. Affording Njaka's pro se pleading liberal construction, this Court construes Njaka's claims against the postal service as claims against Donahoe. This is bolstered by Njaka's definition of Donahoe as

against fiduciaries, Njaka has not pled facts sufficient to demonstrate that these parties are fiduciaries, and the Court declines to impose fiduciary duties on those clearly not encompassed by the statutory definition. *See Garcia v. United States*, 996 F. Supp. 39, 43 (D.D.C. 1998) ("The statute defines 'fiduciary' . . . to include only [the TSP Board and executive director]. § 8477(e)(4)(G). Plaintiffs have not alleged—nor could they allege, given the facts presented—that any [fiduciary], was in any way responsible for the losses that they claim to have suffered."). At the hearing on this matter, Njaka submitted numerous documents and said that one in particular supported his claim that fiduciary duties may be applied to non-fiduciaries. *See* U.S. Gen. Accountability Office, *GAO-03-400, Federal Pensions: DOL Oversight and Thrift Savings Plan Accountability* (2003). The Court remains unconvinced that these documents support a finding that non-fiduciaries may be treated as fiduciaries. Moreover, this Court is bound by the statutory text. Njaka sets forth numerous conclusory allegations regarding the non-fiduciaries' respective roles in the allegedly unlawful behavior, but, even in light of the generous standard afforded to the non-movant on a motion to dismiss, the fiduciary claims against these parties are properly dismissed.

---

"Postal Service" in the introduction of the Amended Complaint. (Am. Compl. ¶ 1 ("against Patrick R. Donahoe ('Donahoe' or 'Postal Service')").

**B.   Statute of Limitations**

Defendants next contend that the FERSA statute of limitations precludes Njaka from proceeding with his claims. The statute of limitations for FERSA fiduciary duty claims is the earlier of six years from the date of the last action of breach or three years from the earliest date on which the plaintiff had actual knowledge of the breach or violation.[8] 5 U.S.C. § 8477(e)(6). An exception exists if a plaintiff can demonstrate fraud or concealment, which then provides a six year statute of limitations from when the plaintiff discovers the breach. *Id.*

Njaka's claims relate to Form TSP-18, and it is undisputed that Form TSP-18 was discontinued on December 31, 1994. (*See* Am. Compl. ¶ 52.) Njaka filed this action on October 24, 2012. Thus, as the alleged breach relates to the form or Form TSP-494, the claim is time barred. In his response memorandum, Njaka argues that he delayed the present action because he did not obtain a copy of his Form TSP-18 until 2006, when he obtained it through discovery in another legal action. (Pl.'s Mem. at 10, Feb. 7, 2014, ECF No. 62.) Section 8477(e)(6) limits a claim to the *earlier of* six years from the date of the breach or three years from when Njaka had knowledge of the breach or violation. Under this standard, the statute of limitations has run.

As such, in order for Njaka's claims to survive, Njaka would need to be able to take advantage of the six year statute of limitations available in the event of fraud or concealment. This standard also fails to save Njaka's claims, however. While the Court credits Njaka for including numerous facts and acknowledging that he labels a number of actions fraudulent, the facts and allegations provided are insufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79

---

[8] Section 8477(e)(6) applies to actions "commenced under paragraph (3)(A) or (B) with respect to a fiduciary's breach of any responsibility, duty, or obligation under subsection (b) or a violation of subsection (c)."

("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The core of Njaka's claims relate to the allegation that Malmborg "falsified" Njaka's retirement category as "none" on Form TSP-18. (Am. Compl. ¶ 28.) The Amended Complaint is voluminous, but the numerous facts fail to convince the Court that there is any cognizable legal claim as to fraud alleged. As such, the Court finds that Njaka may not invoke the statute of limitations as to fraud, and Njaka has not alleged facts that support tolling the non-fraud statute of limitations. Even if Njaka were able to employ the lengthier statute of limitations, the numerous facts and legal citations contained in the Amended Complaint are insufficient to demonstrate an entitlement to relief, so his claims would still fail. As such, the statute of limitations has run, and even if it had not, Njaka's claims are insufficient to survive a motion to dismiss.

In determining that the statute of limitations has run, the Court acknowledges that Njaka pleads some facts that relate to more recent occurrences and believes these facts transform his claims into timely claims. This belief is unfounded. The Amended Complaint includes references to minutes from a November 30, 2011, FRTIB meeting in which it was discussed that Long had testified before "the Agency's House oversight committee" and "one of the legislative issues he raised called for establishing a five-year statute of limitations on benefit claims." (*Id.* ¶ 55 (internal quotation marks omitted)). Njaka argues the "mere act of submitting a legislative proposal to enact a five-year statute of limitations . . . violates the Board's fiduciary obligation to safeguard the interests of all participants." (*Id.* ¶ 56.) This more-recent description of events,

10

however, does not demonstrate "fraud or concealment," *see* § 8477(e)(6)(B), and does not render untimely claims timely.

Although some of the events and communications about which Njaka complains occurred more recently, the underlying breach he alleges occurred decades ago. As Njaka notes, after the initial allegedly fraudulent event occurred, it went "unchallenged for the next three decades." (Pl.'s Mem. at 4.) Njaka essentially requests that the Court suspend the statute of limitations because he was investigating his claims, but such relief is not warranted or permissible. As such, his claims are barred.

### C. Benefits Contribution

Defendants also argue that Njaka fails to state a claim for retirement benefits under FERSA because his claims relate solely to disability benefits, and under FERSA, disability benefits may not be contributed to the TSP. Defendants note that "the majority of [Njaka's Amended Complaint] is centered on the allegations that he was wrongfully denied the ability to contribute disability payments from the [OWCP] to his TSP account." (Defs.' Mem. at 14.) The Court agrees that numerous portions of the Amended Complaint are devoted to Njaka's OWCP payments. (*See, e.g.*, Am. Compl. ¶¶ 10, 14-15, 32, 79, 84.)

TSP participants may contribute a portion of their "basic pay" to their account. 5 U.S.C. § 8432 (discussing contributions and referring to basic pay throughout). The definition of basic pay includes various types of pay, none of which are OWCP related. *See* 5 U.S.C. § 8401(4) (citing 5 U.S.C. § 8331(3)). The Court has searched extensively and is unable to find support for Njaka's position that OWCP payments are available for contribution to the TSP. *See Roja v. Dep't of Navy*, No. SF0752910961-B-1, 1992 WL 359712, at \*621 (M.S.P.B. Nov. 24, 1992) (in the context of the federal employees' retirement system, noting that "[p]ayments received

through OWCP do not constitute salary, pay, or remuneration, but compensation for injury") (citing 5 U.S.C. §§ 8102(a) and 8101(12)). To the extent Njaka is arguing that he should have received TSP contributions for his OWCP payments, this argument is legally unsound because OWCP payments do not constitute "basic pay." *Cf.* 5 U.S.C. § 8101(12) ("compensation" definition in the context of work injuries) *with* 5 U.S.C. § 8401(4) (defining basic pay for FERSA purposes (citing § 8331(3))). This flaw serves as an additional ground for dismissal.

### D. Service of Process

Finally, Defendants argue that dismissal is appropriate because Njaka failed to effectuate proper service of process. Service has been an ongoing problem in this case, with the Court offering Njaka considerable leeway. (*See* Order at 1-2, July 24, 2013, ECF No. 11; Order at 1-3, Aug. 15, 2013, ECF No. 13.) Defendants argue that Njaka has not served the United States Attorney General, the United States Secretary of the Treasury, Sharon Malmborg, and the United States, as is required to sue an employee of the United States.

Regarding service of the United States Attorney General, service has since been completed, rendering Defendants' argument moot. (ECF No. 99.) Similarly, Defendants' argument regarding service of the United States Secretary of the Treasury, *see* § 8477(e)(8)(a), is also moot. (ECF No. 84.)

Regarding Malmborg, a docket entry for September 30, 2013, includes an unexecuted summons return for Malmborg. (ECF No. 23.) The United States Marshal Service noted that "no such person exists at address given above. Unable to locate Sharon Malmborg." Njaka concedes that Malmborg has not been served. (Pl.'s Mem. at 8.) As such, and in light of Njaka's ample opportunities to complete service, lack of service is an additional reason that Malmborg should be dismissed from this action.

That leaves Defendants' final contention regarding service on the United States. On June 11, 2014, Njaka filed a copy of a summons issued for the United States Attorney's Office to be served on Friedrich A.P. Siekert, the Assistant United States Attorney in the District of Minnesota assigned to this matter (ECF No. 106). The summons was returned executed indicating that the United States Marshal Service completed service, and was docketed on June 23, 2014 (ECF No. 107). Although a dispute regarding service may arguably remain, *see* Fed. R. Civ. P. 4(i)(1), the Court will not rely on this ground as a basis for recommending dismissal.

### E. Conclusion

In sum, the Court recommends dismissal of the claims contained in the Amended Complaint. The Court is presented with numerous facts and legal authorities, but no plausible legal claims. The facts alleged against the various Defendants, whether discussing fiduciary duties, discussions with Congress, compliance with audit recommendations, or claims for correction of errors, *see* 5 C.F.R. § 1605.22, all fail to "nudge[] [Njaka's] claims across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Moreover, there are also procedural issues with the claims, as discussed. The Court is sympathetic that Njaka appears to genuinely believe that he has been wronged by individuals who flouted their duties, falsified documents, and committed a "coordinated" scheme to defraud him. Even so, strong beliefs do not transform allegations into actionable claims. The Court recommends that Defendants' motion to dismiss be granted.

### IV. Njaka's Motions for Preliminary Injunction and Temporary Restraining Order

Njaka seeks a preliminary injunction to "enjoin [Defendants] for terminating his employment and all disability benefits related to his Injured on Duty (IOD) status as adjudicated by the [OWCP]. . . . Defendants denied these benefits since February 5, 1990[,] and continuing."

(Pl.'s Mot. Prelim. Inj. ¶ 1, Feb. 7, 2014, ECF No. 57.) Njaka seeks a preliminary injunction to preserve the status quo until the case is decided on its merits. (*Id.*) He also moves for a temporary restraining order. (Pl.'s Appl. TRO, Feb. 7, 2014, ECF No. 56.)

In deciding whether to issue an injunction, a court must consider the threat of irreparable harm to the movant, the state of balance between that harm and the injury that granting the injunction will inflict on the opposing party, the probability that the movant will succeed on the merits, and the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Njaka has failed to present arguments sufficient to persuade the Court that such relief is warranted here, and in light of the Court's determination as to dismissal, the motions should be denied as moot.

## V.     Motion for Leave to File Second Amended Complaint

Njaka also seeks to file a second amended complaint, which Defendants resist on grounds of futility. Defendants highlight the conclusory allegations contained in the proposed second amended complaint, which Defendants allege are unsupported by facts and thus fail to state a claim. Njaka did not provide the Court with a redlined version of the proposed second amended complaint, as required by District of Minnesota Local Rule 15.1(b), which requires parties moving to amend to include a copy of the proposed amended pleading, as well as a redlined version that demonstrates how the proposed amended pleading differs from the operative pleading. After comparing the Amended Complaint and proposed second amended complaint, the only differences the Court is able to detect are to the caption. The proposed second amended complaint adds William Jasien, Thomas E. Perez, and "Unknown Agents" as defendants.

A motion to amend a complaint should be freely granted when justice requires, Fed. R. Civ. P. 15(a)(2), but the right to amend is not absolute. A court may deny amendment for "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (citation omitted). Rule 15(a) governs a party's request to add a party to its pleading. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010).

The Court recommends denying the requested relief for the same reasons the Court recommends the Amended Complaint be dismissed. Moreover, this action has been pending for nearly two years, and Njaka admittedly has been investigating Defendants' alleged wrongdoings for many years. Because justice does not require amendment, the motion should be denied.

**VI.    Request for a Motion to Reconsider Order Granting Extension of Time**

The final request relates to Njaka's Motion for Leave to File Second Amended Complaint. On April 18, 2014, after Njaka sought leave to a second amended complaint, Defendants moved this Court for an extension of time to file their memorandum in opposition. That same day, the Court granted the motion. On April 29, 2014, Njaka asked the Court for leave to file a motion to reconsider the extension. The Court recommends this request be denied.

**VII.   Recommendation**

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant's Motion to Dismiss (ECF No. 49) be **GRANTED**;

2.    Plaintiff's Application for Temporary Restraining Order (ECF No. 56) be **DENIED AS MOOT**;

3.   Plaintiff's Motion for Preliminary Injunction (ECF No. 57) be **DENIED AS MOOT**;

4.   Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 89) be **DENIED**; and

5.   Plaintiff's Request for a Motion to Reconsider Order Granting Extension of Time (ECF No. 100) be **DENIED**;

6.   This case be **DISMISSED WITH PREJUDICE**; and

7.   **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: June 24, 2014        s/ *Jeanne J. Graham*
                            JEANNE J. GRAHAM
                            United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **July 14, 2014**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.