## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| DIM NJAKA, | Civil No. 12-2712 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| MICHAEL D. KENNEDY; PAMELA-JEANNE MORAN; DANA K. BILYEU; THOMAS K. EMSWILER; RONALD D. MCCRAY; DAVID A. JONES; TERRENCE A. DUFFY; PATRICK R. DONAHOE; GREGORY T. LONG; SETH D. HARRIS, Acting Secretary of Labor; and SHARON MALMBORG, | |
| Defendants. | |

Dim Njaka, Box 244, Long Lake, MN 55356, *pro se*.

Friedrich A. P. Siekert, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; and Ryan R. Montgomery, **FEDERAL RETIREMENT THRIFT INVESTMENT BOARD**, 77 K Street NE, Washington, DC 20002, for defendants.

Plaintiff Dim Njaka filed this action alleging that the Defendants breached fiduciary duties owed to him as a federal Thrift Savings Plan ("TSP") participant under the Federal Employees' Retirement System Act of 1986 ("FERSA"). The Defendants moved to dismiss for insufficient service of process, lack of personal jurisdiction, and failure to state a claim on which relief may be granted. Njaka filed several motions seeking injunctive relief and leave to file a second amended complaint. On June 24,

2014, United States Magistrate Judge Jeanne J. Graham issued a Report and Recommendation ("R&R") recommending that the Court grant Defendants' motion to dismiss with prejudice and deny all of Njaka's motions. This matter is now before the Court on Njaka's objections to the R&R. Having conducted a *de novo* review of those portions of the R&R to which Plaintiff objects, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), and having carefully reviewed the submitted materials, the Court will overrule Njaka's objections and adopt the R&R because it finds that some of the Defendants were not fiduciaries as defined by FERSA, and the remainder of Njaka's claims are barred by the statute of limitations.

## BACKGROUND

### I.   DISPUTE SURROUNDING NJAKA'S RETIREMENT BENEFITS

Njaka was a mail handler for the United States Postal Service ("USPS") in 1988. (Am. Compl. ¶ 13, Mar. 5, 2013, Docket No. 9.) On September 2, 1988, he sustained an on-the-job injury. (*Id.*) On May 22, 1989, he received a letter from the Department of Labor's Office of Workers' Compensation Programs ("OWCP") informing him that the OWCP had reviewed his diagnosis and accepted his on-the-job injury claim. (*Id.* ¶ 14.)

As a result of the OWCP accepting his claim, Njaka received a letter on November 27, 1989, informing him that he was entitled to a "leave buy back." (*Id.* ¶ 15.) A leave buy back is an option available to workers injured on-the-job who are forced to use sick or annual leave to cover their injury-related absence. (*Id.* ¶ 16.) The leave buy back option involves altering the worker's status from being on "leave with pay" to

"leave without pay," which then enables the worker to reinstate their sick or annual leave and receive compensation for the leave they used to cover their absence. (*Id.* ¶¶ 16-17.) During "leave with pay" status, employees receive 100% of their salary, including benefits such as retirement plan contributions. (*Id.* ¶ 17.) OWCP compensation for "leave without pay" periods is paid at two-thirds of the employee's base pay and does not include additional benefits such as retirement contributions. (Decl. of Dim Njaka, Ex. 26 (Leave Buy Back Worksheet) at 92, Feb. 7, 2014, Docket No. 60-2.)[1]

In Njaka's case, the OWCP informed him that he was eligible to buy back leave for the period extending from December 19, 1988 through January 20, 1989. (Am. Compl. ¶ 15.) On December 18, 1989, Njaka completed the "Application for Reinstatement of Leave," which was attached to the OWCP's November 27, 1989 letter. (*Id.* ¶ 18.) Njaka alleges that the USPS withheld his leave buy back compensation amount of $1,947.02 and sent two internal requests to the OWCP for more information about Njaka's claim. (*Id.* ¶ 20.) Njaka's employment was then terminated on May 21, 1990. (*Id.* ¶ 21.) The terminal leave worksheet stated that Njaka had a remaining sick leave balance of one hour and that the reason for his termination was "[E]XCESS ABSENCE." (*Id.* ¶ 22.) Njaka received a compensation check from OWCP on June 27, 1990, in the amount of $3,035.46, which he believed was related to his leave buy back compensation. (*Id.* ¶ 23.)

In July 1990, Njaka attempted to contact the USPS personnel office regarding the OWCP compensation check. (*Id.* ¶ 24.) On August 20, 1990, a retirement specialist with

---

[1] All page numbers refer to the CM/ECF pagination unless otherwise noted.

the USPS informed him that if his separation was "later determined to have been improper," and if he was "returned to employment, and if [his] restoration [wa]s with entitlement to pay into the retirement fund," then his "basic pay over the intervening period [would] be subject to retirement deductions" and he would receive credit for his improper separation during that intervening period. (*Id.* ¶ 25.)

On the same day (August 20, 1990), the USPS completed for Njaka a Form TSP-18, a "validation of retirement information" form submitted by federal agencies within thirty days of an employee's separation. (*Id.* ¶¶ 29, 50.) The form relates to the federal TSP, which is a defined contribution pension plan for federal employees, structured similarly to a private-sector 401(k) plan. (*Id.* ¶¶ 2, 4.) The TSP is administered by the Federal Retirement Thrift Investment Board ("FRTIB"). (*Id.* ¶¶ 1-2.) Prior to its elimination in 1995, Form TSP-18 was "used to determine the [TSP] participant's withdrawal options and when certain withdrawals may begin. Hence, TSP accounts [could not] be disbursed before this form [was] received." (*Id.* ¶¶ 50-52 (emphasis and citation omitted).) In Njaka's case, Sharon Malmborg, the USPS benefits officer that completed Njaka's Form TSP-18, marked on the form that Njaka's retirement category was "none," rather than "disability/workers' compensation." (*Id.* ¶¶ 1, 28.) The form was then sent to the National Finance Center, which used the information on the Form TSP-18 to draft Form TSP-494, a letter declaring Njaka ineligible for retirement benefits through TSP. (*Id.* ¶ 29.) The letter, dated January 18, 1991, instructed Njaka to contact the TSP Services Office if he believed the retirement ineligibility determination was incorrect. (*Id.* ¶ 30.) Because Njaka believed it was correct at the time, (*id.*), he signed

the Form TSP-494 on March 20, 1991, indicating that he was "a TSP participant 'without retirement eligibility (generally less than five years of service.'" (*Id.* ¶ 31.) Accordingly, the funds he had collected in his TSP account (less than $3,500) were automatically distributed to him. (*Id.* ¶¶ 30, 58.)

On October 2, 1991, OWCP granted Njaka a leave buy back award of $54.08 for leave Njaka took on December 7, 1989. (*Id.* ¶ 32.) On October 4, 1991, Njaka attempted to reinstate his sick and annual leave to reflect the leave buy back, but the USPS informed him that it was unable to process his request given that he no longer worked for the agency. (*Id.* ¶¶ 32-37.) Njaka alleges that the USPS failed to take the necessary further action to "restore or adjust Plaintiff's TSP balance to reflect these [leave buy back] awards." (*Id.* ¶ 38.)

## II.     THIS PROCEEDING

### A.     Njaka's Amended Complaint

In an effort to obtain a TSP account adjustment for his leave buy back awards, Njaka initiated this action alleging multiple violations of the FERSA. Specifically, Njaka claims that the errors in completing and processing his Form TSP-18 – and, consequently, Form TSP-494 – constituted breaches of fiduciary duties under FERSA, 5 U.S.C. §§ 8472(h) and 8477(b)(1), and caused him to lose TSP contributions for which he argues Defendants are now personally liable, *see* 5 U.S.C. § 8477(e)(1)(A). His amended complaint has seven counts.

In Count I, Njaka alleges breach of the fiduciary duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing," *id.* § 8477(b)(1)(B), by the current members of the FRTIB[2]; Gregory T. Long, the current Executive Director of the FRTIB; the United States Secretary of Labor[3]; and Patrick R. Donahoe, the Postmaster General.  (Am. Compl. ¶¶ 77-81.)  Count II alleges a breach of fiduciary duty under § 8477(b)(1) by Sharon Malmborg, the USPS benefits officer that completed Njaka's Form TSP-18.  (*Id.* ¶¶ 83-85.)  Count III alleges that Defendant Long and the members of the FRTIB violated § 8477(c)(2)(B), which prohibits a TSP fiduciary from acting "in any transaction involving the [TSP] on behalf of a party, or representing a party, whose interests are adverse to the interests of the [TSP] or the interests of its participants or beneficiaries . . . ."  5 U.S.C. § 8477(c)(2)(B).  (Am. Compl. ¶¶ 87-89.)  Count IV asserts that Defendant Pamela-Jeanne Moran, the Director of the Office of Participant Services for the FRTIB, "knowingly and substantially assisted [Defendant Long, Defendant Malmborg, and the members of the FRTIB] in their breaches of fiduciary duty" in Counts I, II, and III.  (*Id.* ¶¶ 91-92.)  Count V makes the same "knowingly and substantially assisted" allegation against Thomas K. Emswiler, the FRTIB General Counsel.  (*Id.* ¶¶ 94-95.)  Count VI alleges that the USPS (acting through

---

[2] The FRTIB members are named in the amended complaint as Defendants Michael D. Kennedy, Dana K. Bilyeu, Ronald D. McCray, David A. Jones, and Terrence A. Duffy.  (Am. Compl. ¶ 1.)

[3] In his amended complaint, Njaka names Seth D. Harris as a Defendant because he was the Acting Secretary of Labor at the time.  Thomas E. Perez is the current United States Secretary of Labor and is automatically substituted for Harris in this action because Harris was sued in his official capacity.  *See* Fed. R. Civ. P. 25(d).  In the interest of clarity, the Court will refer only to "the Secretary of Labor."

Postmaster General Donahoe) breached its fiduciary duty, under § 8477(b)(1)(B), to act with care and diligence in providing Njaka with his TSP contributions.  (Am. Compl. ¶¶ 97-99.)   Finally, Count VII asserts against Defendant Long, the USPS (through Defendant Donahoe), and the members of the FRTIB, an additional breach of fiduciary duty under 5 U.S.C. §§ 8477(b)(1)(B) and 8477(c)(1)(A), for failing to "[allow] the transfer of assets with adequate consideration" in the form of his "disability benefits related to OWCP Leave Buy Back awards."  (Am. Compl. ¶¶ 101-103.)

### B.    The Motions Before the Court

In this Order, the Court addresses a number of motions filed by the parties.  First, the Defendants moved to dismiss Njaka's claims with prejudice on four grounds: lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); insufficient process under Rule 12(b)(4); insufficient service of process under Rule 12(b)(5); and failure to state a claim upon which relief can be granted, under Rule 12(b)(6).  (Mot. to Dismiss, Jan. 17, 2014, Docket No. 49.)

Njaka subsequently applied for a temporary restraining order preventing the members of the FRTIB from:

> [M]odifying, amending or terminating the employment and related benefits of an OWCP-certified permanently disabled Plaintiff who was entitled to the suitable position of a computer programmer/analyst on February 5, 1990 or at any time before or after that date, pending this Court's consideration of Plaintiff's motion for a preliminary injunction.  And for the [members of the FRTIB] to cease and desist from any legislative efforts to reduce the statute of limitations on filing benefits claims.

(Pl.'s Appl. for TRO at 1, Feb. 7, 2014, Docket No. 56.)   At the same time, Njaka also moved for a preliminary injunction to "enjoin the defendants from terminating his employment and all disability benefits related to his Injured on Duty (IOD) status . . . . Defendants have denied these benefits since February 5, 1990 and continuing."   (Pl.'s Mot. for a Prelim. Inj. at 1, Feb. 7, 2014, Docket No. 57.)   Additionally, he moved for leave to file a second amended complaint, which adds William Jasien, Thomas E. Perez, and Unknown Agents as Defendants in the caption, but appears to be otherwise unaltered from his amended complaint.   (Mot. for Leave to File Second Am. Compl., Apr. 14, 2014, Docket No. 89.)   William Jaisen has replaced Defendant Duffy on the FRTIB, (R&R at 7, June 24, 2014, Docket No. 108), and Thomas E. Perez has become the Secretary of Labor, (*id.* at 6 n.5).   Finally, Njaka filed a motion to reconsider the Court's Order granting Defendants an extension of time to file their memorandum in opposition to Njaka's motion to file a second amended complaint.   (Req. for Mot. to Reconsider, Apr. 29, 2014, Docket No. 100.)   In his motion to reconsider, Njaka argues that granting Defendants an extension to respond to his motion put him "at a disadvantage due to an upcoming family wedding," particularly in light of his *pro se* status and limited access to legal resources.   (*Id.* at 2.)   He asserts that "Defendants['] motion to extend is tantamount to undue harassment."   (*Id.*)

The Magistrate Judge recommended that the Court grant Defendants' motion to dismiss and deny Njaka's motions, with the application for a temporary restraining order and the motion for a preliminary injunction being denied as moot.   (R&R at 15-16.)   This Court granted Njaka an extension of time to file objections to the R&R, (Order, July 18,

- 8 -

2014, Docket No. 113), after which Njaka timely objected, (Objections to R&R, July 25, 2014, Docket No. 114.).

## ANALYSIS

### I.    STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  Njaka objects to Magistrate Judge Graham's recommendations on each of the five motions before the Court.  The Court will evaluate each motion in turn.

### II.   DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss all of the claims in Njaka's amended complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5), on the grounds that Njaka has not effectuated proper service of process and the Court therefore lacks personal jurisdiction over the Defendants.  Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the grounds that: some Defendants are not proper parties; Njaka's claims exclusively relate to disability benefits, which are not eligible for contribution to a TSP account; Njaka's action is barred by the FERSA statute of limitations; and Njaka's allegations fail to state a claim upon which relief can be granted.

The Magistrate Judge concluded that Njaka effectuated proper service of process on all Defendants except Defendant Malmborg, and thus the Court has personal jurisdiction over all Defendants other than Defendant Malmborg. (R&R at 12-13.) The Magistrate Judge recommended, however, that Njaka's claims be dismissed pursuant to Rule 12(b)(6), for three reasons: first, several of the named Defendants are not "fiduciaries" as the term is defined by FERSA, and therefore are not subject to fiduciary duties under FERSA, (*id.* at 6-8); second, Njaka's claims are barred by the statute of limitations for fiduciary duty claims under FERSA, (*id.* at 9-11); and third, Njaka's claims relate to disability benefits, which are not eligible for contribution to the TSP under FERSA, and Njaka therefore fails to state a claim for TSP retirement benefits, (*id.* at 11-12).

With respect to Defendants' motion to dismiss, Njaka objects only to the Magistrate Judge's findings and recommendations under Rule 12(b)(6). The Court will affirm the Magistrate Judge's determination on Defendants' motion to dismiss under Rules 12(b)(2), 12(b)(4), and 12(b)(5), as it is neither erroneous nor contrary to law. The Court will review *de novo* only the parties' Rule 12(b)(6) arguments.

In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states "'a claim to relief that is plausible on its face.'" *See, e.g.*, *Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 534-35 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" and therefore must be dismissed. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### A.    Fiduciary Status

Njaka objects to the Magistrate Judge's recommendation that his claims be dismissed against certain Defendants for failure to adequately demonstrate that they qualified as fiduciaries. The Court concludes that Njaka's amended complaint fails to state a claim upon which relief can be granted against Defendants Moran, Emswiler, Malmborg, Donahoe, and the Secretary of Labor, because Njaka does not sufficiently allege that those Defendants are fiduciaries under FERSA. FERSA clearly defines the term "fiduciary" under the statute to refer to:

> (A)  a member of the Board;
>
> (B)  the Executive Director;
>
> (C) any person who has or exercises discretionary authority or discretionary control over the management or disposition of the assets of the Thrift Savings Fund; and
>
> (D) any person who, with respect to the Thrift Savings Fund, is described in section 3(21)(A) of the Employee Retirement Income Security Act of 1974 [ERISA] (29 U.S.C. [§] 1002(21)(a))[.]

5 U.S.C. § 8477(a)(3). In his objections, Njaka focuses on the ERISA definition. Section 1002(21)(a) of ERISA is very similar to 5 U.S.C. § 8477(a)(3)(C). It defines a fiduciary as any person who, with respect to a retirement plan – here, the TSP – exerts "discretionary authority or discretionary control respecting management of such plan or

exercises any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C. § 1002(21)(a).

In Njaka's case, the FRTIB members – Defendants Kennedy, Bilyeu, McCray, Jones, and Duffy[4] – are all fiduciaries under FERSA.  5 U.S.C. § 8477(a)(3)(A).  Defendant Long – the Executive Director of the FRTIB – is also unequivocally a fiduciary.  *Id.* § 8477(a)(3)(B).   The remaining Defendants – Moran, Emswiler, Malmborg, Donahoe, and the Secretary of Labor – are less clear.  Njaka argues that "fiduciary" is broadly defined under ERISA and the Court should adopt the same broad view under FERSA in light of 5 U.S.C. § 8477(a)(3)(D).  But he offers no explanation of how Emswiler (the FRTIB general counsel), Donahoe (the Postmaster General), or the Secretary of Labor had discretionary authority or control over his TSP account funds.  Merely alleging that these individuals have a fiduciary duty to TSP participants because they have some connection to, or play some role in, the TSP is insufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Thus, the Court concludes that Njaka has not stated a claim upon which relief may be granted against Emswiler, Donahoe, and the Secretary of Labor.

Defendants Malmborg and Moran have the most ambiguous fiduciary status, but the Court concludes that neither Malmborg nor Moran held fiduciary status with respect to Njaka's TSP fund.  Defendant Malmborg, as the benefits officer who processed

---

[4] Defendant Duffy would now be replaced by William Jasien, who succeeded Terrence Duffy as a member of the FRTIB in 2013.  (Defs.' Mem. in Supp. of Mot. to Dismiss, Jan. 17, 2014, Docket No. 51.)

Njaka's Form TSP-18 and indicated that his retirement category was "none," (Am. Compl. ¶ 28), played a direct role in the denial of benefits to which Njaka claims he was entitled. Njaka has not alleged facts, however, that would allow the Court to conclude that Malmborg had any discretion over Njaka's TSP account. On the contrary, it appears that she simply filled out for Njaka a standard form with the employment information available to her and then sent it to the TSP record keeper, which was the entity that declared Njaka ineligible for retirement benefits. (*Id.* ¶¶ 28-29.) Without more, the Court is not persuaded that Defendant Malmborg possessed sufficient discretionary authority over Njaka's TSP account to qualify as a fiduciary under FERSA.

Defendant Moran was the Director of the FRTIB's Office of Participant Services in 2012 when Njaka sent a letter to the FRTIB seeking acknowledgement of his claims regarding his TSP account. (*Id.* ¶¶ 60-61.) Although Njaka received a response from Moran explaining the actions taken with respect to Njaka's TSP account at the time of his termination more than twenty years prior, (*id.* ¶¶ 61-63), there is no indication that Defendant Moran had any discretionary control over Njaka's account at the time those actions were taken. Further, Njaka does not allege any basis that would allow the Court to find that Defendant Moran had any fiduciary duty to Njaka in 2012 when she sent the letter regarding the FRTIB's handling in 1990 of his Form TSP-18. Consequently, the Court concludes that Njaka has failed to state a claim on which relief may be granted with respect to Defendant Moran.

**B.      Statute of Limitations**

Even for the Defendants who likely qualify as fiduciaries under FERSA, however,

the Court concludes that Njaka's remaining claims are barred by the FERSA statute of

limitations for fiduciary duty claims.  The FERSA statute of limitations for fiduciary duty

claims states:

> An action **may not be commenced** . . . **after the earlier of**--
>
> (A) 6 years after (i) the date of the last action which constituted a part of the breach or violation . . . or;
>
> (B) 3 years after the earliest date on which the plaintiff had actual knowledge of the breach or violation, except that, in the case of fraud or concealment, such action may be commenced not later than 6 years after the date of discovery of such breach or violation.

5 U.S.C. § 8477(e)(6) (emphasis added).   Here, the breach occurred more than two

decades ago, in 1990, when Njaka was terminated from his position with the USPS and

his Form TSP-18 was filed.   Njaka filed this action on October 24, 2012.   (Compl.,

Oct. 24, 2012, Docket No. 1.)  As such, his claims are well outside the six year statute of

limitations and thus barred by 5 U.S.C. § 8477(e)(6)(A).

Njaka asserts, in both his amended complaint and his objections to the R&R, that

Defendants have participated in fraud and concealment, preventing Njaka from learning

of the error on his Form TSP-18 until a discovery proceeding in 2006.  (Am. Compl.

¶¶ 56-57; Objections at 4-5.)   In support of these assertions, Njaka points to five

documents he introduced during the hearing before the Magistrate Judge; in particular,

Njaka describes a 1995 order from the Merit Systems Protection Board granting a motion

by Njaka to compel production of his USPS personnel folder – an order with which

Njaka claims Defendants failed to comply.  (*See* Objections at 4.)  The Court is ultimately not persuaded that this evidence states a legal claim for fraud.  Thus, the Court concludes that Njaka is bound by the non-fraud statute of limitations in FERSA, under which his fiduciary duty claims are now barred.

## III.  NJAKA'S MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Njaka objects to the Magistrate Judge's recommendation that his application for a temporary restraining order and motion for a preliminary injunction should be denied.  In his objections, Njaka argues that he is entitled to Defendants "processing two LBBs, providing the promised Qualified Vocational Rehabilitation counseling, executing the Continuation of Pay award, [and] providing comprehensive medical coverage . . . ." (Objections at 7.)  Njaka explains that, "[s]ince [5 U.S.C.] § 8128(b) does not permit any re-litigation of these awards, this court has no choice but to grant the TRO and PI."  (*Id.*)

As the Magistrate Judge correctly explained, when ruling on a motion for injunctive relief, "a court must consider the threat of irreparable harm to the movant, the state of balance between that harm and the injury that granting the injunction will inflict on the opposing party, the probability that the movant will succeed on the merits, and the public interest."  (R&R at 14 (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).)  If, however, a party "fail[s] to show any likelihood of success on the merits," the Court need not consider the remaining factors.  *See Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 233 (8th Cir. 2008).

The Court concludes that in this case, Njaka has not demonstrated that he will likely succeed on the merits. As explained above, Njaka cannot succeed on the merits of his fiduciary duty claims against Defendants Moran, Emswiler, Malmborg, Donahoe, and the Secretary of Labor, because they are not fiduciaries under FERSA. Further, Njaka has not shown that he is likely to succeed on his remaining claims, because they are barred by the FERSA fiduciary duty claim statute of limitations. Therefore, Njaka has not made the requisite showing that he is likely to succeed on the merits of any of his claims.

Njaka argues in his objections that Section 8128(b) of FERSA is determinative with respect to his motions for injunctive relief, because it prevents re-litigation of certain benefits and compels this Court to grant the motions. Njaka is correct that 5 U.S.C. § 8128(b) makes any

> action of the Secretary [of Labor] or his designee in allowing or denying a payment [of compensation for an on-the-job injury] . . . **final and conclusive** for all purposes and with respect to all questions of law and fact; and . . . **not subject to review** by another official of the United States or **by a court by mandamus or otherwise**.

5 U.S.C. § 8128(b) (emphasis added). This provision does not apply, however, to the matters currently before the Court. Section 8128(b) would prevent the Court from reviewing OWCP's determination that Njaka was entitled to compensation for his on-the-job injury, *see Duncan v. Dep't of Labor*, 313 F.3d 445, 446 (8th Cir. 2002), but neither Njaka nor Defendants ask the Court to undertake such a review. Rather, Njaka agrees with the final result of OWCP's adjudication and now challenges the USPS's actions in

light of that result.  Section 8128(b) does not speak to such a challenge and thus does not

compel this Court to grant injunctive relief to Njaka in this case.

Because the Court determines that Njaka has failed to show any likelihood of

succeeding on the merits, the Court need not consider the remaining injunctive relief

factors.  This portion of Njaka's objections is overruled, and the Court denies Njaka's

application for a temporary restraining order as well as his motion for a preliminary

injunction.

## IV.   NJAKA'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Njaka's objection to the Magistrate Judge's recommendation on his motion for

leave to file a second amended complaint is brief and general.  The Magistrate Judge

explained that "[a] motion to amend a complaint should be freely granted when justice

requires . . . . [However,] this action has been pending for nearly two years, and Njaka

admittedly has been investigating Defendants' alleged wrongdoings for many years.

Because justice does not require amendment, the motion should be denied."  (*Id.* at 15.)

Njaka argues that the Court should not deny his motion "because any deficiency [in his

proposed second amended complaint] can be cured readily."    (Objections at 7.)

Defendants oppose Njaka's motion on the grounds that amending the complaint would be

futile.   After thoroughly examining Njaka's proposed second amended complaint, the

Court concludes that its deficiencies cannot be readily cured and denies Njaka's motion.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court

should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P.

15(a)(2).  But "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted).

Where, as here, futility is raised as a basis for opposing any proposed amendments to a complaint, the Court must determine whether the proposed claims state a claim for relief at this stage of the case.  *See Briscoe v. Cnty. of St. Louis, Mo.*, 690 F.3d 1004, 1015 (8th Cir. 2012) ("When the court denies leave to amend on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ." (alteration and internal quotation marks omitted)); *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).  Amendment is futile where the proposed amended claim would not withstand a motion to dismiss.  *See Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008).  Thus, the question in determining whether to permit amendment is "whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard." *Zutz*, 601 F.3d at 850-51.

Here, the only difference between Njaka's amended complaint and proposed second amended complaint is the addition of William Jasien, Thomas E. Perez, and Unknown Agents as Defendants in the caption, to reflect personnel changes on the FRTIB and at the position of Secretary of Labor.  (Mot. for Leave to File Second Am. Compl. at 1; *see also* R&R at 6 n.5, 7.)  The addition of these three Defendants –

particularly proposed Defendants Jasien and Perez – is an important change to keep Njaka's claims current. Without more, however, this amendment does not cure the deficiencies in Njaka's complaint: that some of the Defendants are not fiduciaries as defined by FERSA, and the remaining claims are barred by the statute of limitations. Njaka's proposed second amended complaint does not allege any new injuries by any of the Defendants, nor does he assert any new facts to show why Secretary of Labor Perez would be bound by a fiduciary duty to Njaka under FERSA.

Njaka's proposed amendments are insufficient to survive a motion to dismiss. Because the Court concludes that Njaka's fiduciary duty claims under FERSA are barred by the statute of limitations, allowing Njaka an opportunity to further amend his complaint would be futile. The Court therefore denies Njaka's motion for leave to file a second amended complaint.

## V.   NJAKA'S MOTION TO RECONSIDER ORDER GRANTING EXTENSION OF TIME

Without elaboration, the Magistrate Judge finally recommended that the Court deny Njaka's motion to reconsider granting an extension of time to Defendants. (R&R at 15.) Njaka now asks the Court to reconsider its grant of an extension for Defendants to file their memorandum in opposition to Njaka's motions for a temporary restraining order and preliminary injunction. "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made, before the original time or its extension expires[.]" Fed. R. Civ. Pro. 6(b)(1)(A). Here, Defendants requested an extension for good cause before the time expired for filing a memorandum

in opposition to Njaka's motion.  (Mot. for Extension of Time to File Resp., Apr. 18, 2014, Docket No. 94.)  Finding good cause for the extension, the Court granted Defendants' motion. (Order Granting Extension of Time, Apr. 18, 2014, Docket No. 98.) Defendants then filed their memorandum in opposition to Njaka's motions on May 8, 2014, within the extended time.  (Mem. in Opp'n, May 8, 2014, Docket No. 101.)  The Court finds no indication that Njaka was prejudiced by this extension.  Thus, Njaka's motion is denied.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Njaka's objections [Docket No. 114] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated June 24, 2014 [Docket No. 108]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 49] is **GRANTED**.

2. Plaintiff's Application for Temporary Restraining Order [Docket No. 56] is **DENIED as moot**.

3. Plaintiff's Motion for a Preliminary Injunction [Docket No. 57] is **DENIED as moot**.

4. Plaintiff's Motion for Leave to File Second Amended Complaint [Docket No. 89] is **DENIED**.

5. Plaintiff's Request for a Motion to Reconsider Order Granting Extension of Time [Docket No. 100] is **DENIED**.

6.      This case is **DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   September 30, 2014                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                               United States District Judge